UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) ) ) | 2:18-CR-98 |
| vs. | ) ) | |
| DANIEL KEITH HYLMON, | ) ) | |
| Defendant. | ) ) | |

**REPORT AND RECOMMENDATION**

Defendant, Daniel Keith Hylmon, has filed a Motion to Suppress [Doc. 27]. The United States filed a Response in Opposition [Doc. 28]. This matter is before the Court pursuant to 28 U.S.C. § 636(b) and the standing orders of the District Court for a Report and Recommendation.

On Tuesday, June 25, 2019, the Court conducted an evidentiary hearing on Defendant's motion. Present at the hearing were Defendant, his counsel, Tim S. Moore, Esq. and Assistant United States Attorney Thomas McCauley, Esq. Testifying at the hearing were Officer Alex Garrison, Officer Hannah Farmer, and Defendant. This matter is now ripe for resolution. For the reasons stated herein, the undersigned RECOMMENDS the Motion to Suppress [Doc. 27] be DENIED.

**I.  PROCEDURAL BACKGROUND**

On July 10, 2018, a federal grand jury returned an indictment against Defendant charging him with possessing with the intent to distribute fifty grams or more of methamphetamine under 21 U.S.C. §§ 841(a)(1), (b)(1)(A), possessing a firearm in furtherance of a drug trafficking offense under 18 U.S.C. § 924(c)(1)(A), and being a felon in possession of a firearm under 18 U.S.C. §§ 922(g)(1) and 924(e) [Doc. 1]. On June 7, 2019, Defendant filed a Motion to Suppress [Doc. 27],

1

arguing that the officer did not have probable cause to stop Defendant's vehicle and that the search of the locked box found in Defendant's vehicle was unconstitutional. Defendant also questions the reliability of the canine used by the officer. As such, Defendant contends that any evidence obtained from the traffic stop and search of his vehicle should be suppressed as a violation of the Fourth Amendment. The United States responds [Doc. 28] that the officer had probable cause to conduct the traffic stop; that the dog was reliable in performing a sniff and alerting on Defendant's vehicle; and that search of the locked box was constitutional. Therefore, it contends that the motion to suppress should be denied.

## II. FINDINGS OF FACT

On the night of January 29, 2018, Johnson City Police Officer Alex Garrison was sitting in the parking lot between Mullins Shaolin Kung Fu and Modern Supply Company on Highway 321 in Johnson City, Tennessee. He was able to observe traffic leaving both the 11-E Motel and the Park n' Stay Inn. Officer Garrison saw a black Mitsubishi sedan pull out from the 11-E Motel. Officer Garrison pulled out behind the car, accelerating to catch up to the vehicle. He then ran the license plate number on his PDA, which indicated the tag belonged to a Honda, not a Mitsubishi. At this time, Officer Garrison initiated a traffic stop on the vehicle and followed the vehicle into the parking lot of Walmart. Officer Garrison then informed dispatch that he was conducting this stop.

Officer Garrison approached the vehicle and immediately informed Defendant, who was driving the vehicle, the reason he stopped him was that his license plate on his car came back to a Honda. He asked Defendant for his license, and Defendant responded that he did not have his license or any kind of identification. Defendant did provide Officer Garrison with enough information for Officer Garrison to determine that Defendant's license was suspended. Officer

2

Garrison also learned that Defendant was charged with evading arrest a couple of weeks prior to this stop, as well as previously being charged with drug related offenses. Upon informing Defendant that his license was suspended and that he was aware of Defendant's recent evasion, Officer Garrison asked Defendant if there was anything illegal in the car, to which Defendant responded that there might be a couple of marijuana roaches in the ashtray. Defendant refused Officer Garrison's request to search the car, even after Officer Garrison informed Defendant that if he refused, a drug dog would be called to check the vehicle.

After Defendant refused consent, Officer Garrison did in fact call Johnson City Police K9 Officer Hannah Farmer to bring her dog Rouzo to the scene. Officer Garrison obtained additional information on Defendant, as he intended to arrest him and take him into custody for the driving violation. He also obtained the passenger's information. Officer Farmer and Rouzo arrived on scene. They circled the vehicle twice. Rouzo alerted near the rear of the driver's side of the vehicle. Upon searching the vehicle, officers found various items, including knives and a small locked box in the back floorboard of the car. Officer Garrison asked Defendant to open the box, and when he refused, Officer Farmer opened the box using a small multi-tool. Officers found approximately 100 grams of methamphetamine, a revolver, and a small amount of marijuana in the box.

At the hearing, Officer Farmer testified to Rouzo's certifications, stating that he had been certified on January 10, 2018 by the North American Police Work Dog Association to detect the presence of marijuana, cocaine, heroin, and methamphetamine.

### III.  Analysis

Defendant argues that (1) the officer did not have probable cause before he initiated the traffic stop; (2) the United States must prove K9 Rouzo's reliability; and (3) it was unconstitutional

3

to open the locked box found in the vehicle. The United States opposes all three arguments. The Court will address each in turn.

**A. The officer did have probable cause before initiating the traffic stop and seizing Defendant.**

Defendant argues that Officer Garrison did not know that the license plate on Defendant's vehicle was not registered to that vehicle prior to initiating the stop. Specifically, Defendant argued that as soon as Officer Garrison pulled out behind Defendant, accelerating to catch up to him, Defendant was seized as he believed he had no other option other than to pull over, despite Officer Garrison not yet activating his blue lights. Officer Garrison testified that he was able to and did indeed read Defendant's license plate and run the tag on his PDA prior to initiating the stop. And while Defendant may have believed that he had no other option other than to pull over, Officer Garrison had not yet shown any authority that he intended to perform a traffic stop.

"A person is seized by the police and thus entitled to challenge the government's action under the Fourth Amendment when the officer, by means of physical force or show of authority, terminates or restrains his freedom of movement." *Brendlin v. California*, 551 U.S. 249, 254 (2007) (quoting *Florida v. Bostick*, 501 U.S. 429, 434 (1991)). The Supreme Court in *United States v. Mendenhall* established the test determining whether a seizure has occurred: "police can be said to have seized an individual only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *Michigan v. Chesternut*, 486 U.S. 567, 573 (1988) (quoting *United States v. Mendenhall*, 446 U.S. 544, 554 (1980)) (internal quotation marks omitted). The Supreme Court specifically called for "consistent application from one police encounter to the next, regardless of the particular individual's response to the actions of the police." *Chesternut*, 486 U.S. at 574.

4

Defendant testified that he observed the police car sitting near the 11-E Motel and that he noticed it pull out behind him. He further testified that he saw the officer rapidly approach from behind and follow him when he changed lanes. It was at this point, before the officer had activated any blue lights, that Defendant testified that he felt as if he must pull over. However, he acknowledged that the officer had not made any overt show of authority.

In *Michigan v. Chesternut*, the Supreme Court found that "a brief acceleration to catch up with respondent, [who was walking], followed by a short drive alongside him" did not constitute a seizure. 486 U.S. at 576. Specifically, that conduct "was not 'so intimidating' that respondent could reasonably have believed that he was not free to disregard the police presence and go about his business." *Id*. The Supreme Court notes that "[t]he record does not reflect that the police activated a siren or flashers; or that they commanded respondent to halt, or displayed any weapons; or that they operated the car in an aggressive manner to block respondent's course or otherwise control the direction or speed of his movement." *Id*. at 575.

In this case, the facts are similar with one notable difference: Defendant was driving a car, whereas the respondent in *Chesternut* was a pedestrian and in more of a position to find the officer's actions in his vehicle "so intimidating" as to result in a constructive seizure. In *Chesternut*, the respondent was arguably in a more vulnerable position as a pedestrian. Here, the officer did not show any authority or otherwise act aggressively. Defendant argues that he subjectively felt as if he was seized. However, the test is objective. *Id*. at 574 ("The test's objective standard–looking to the reasonable man's interpretation of the conduct in question—allows the police to determine in advance whether the conduct contemplated with implicate the Fourth Amendment.") The Court must determine if a reasonable person would have felt seized under the circumstances. Officer Garrison pulled out and drove up behind Defendant and stayed behind him

5

as he changed lanes, maintaining a reasonable distance behind him, without initially activating his blue lights. This situation would be a common one whenever a police officer is on the road. In that situation, as in this one, a reasonable person would believe that their means of travel would not be restricted until the officer activated his lights or made some other overt action, suggesting that the individual should stop. Therefore, the Court finds that the Defendant was not seized until Officer Garrison activated his blue lights.

The Court further finds that the officer did have probable cause that Defendant had committed a traffic violation before he initiated the stop. Officer Garrison testified that he ran the license plate and established that the plate was switched prior to initiating the stop. This is a violation of T.C.A. § 55-4-129, the unlawful removal of decals or plates.[1] The Court finds Officer Garrison's testimony to be credible. Therefore, Officer Garrison did not violate Defendant's Fourth Amendment rights in initiating the traffic stop.

**B. K9 Rouzo was sufficiently trained, certified, and reliable.**

Defendant contends that "the burden will be on the government to establish, by calling Rouzo's handler at the hearing, that the canine is reliable." [Doc. 27, pg. 2]. Courts have found that:

> evidence of a dog's satisfactory performance in a certification or training program can itself provide sufficient reason to trust his alert. If a bona fide organization has certified a dog after testing his reliability in a controlled setting, a court can presume (subject to any conflicting evidence offered) that the dog's alert provides probable cause to search.

---

[1] "Unless lawfully transferred in accordance with this chapter, it is unlawful to willfully cut, clip or otherwise remove the registration decal from a registration plate, or to remove a registration plate from a motor vehicle if either are removed for the purpose of selling the decal or plate, attaching the decal or plate to another registration plate or motor vehicle, or otherwise using the decal or plate to circumvent or avoid the vehicle registration laws of this chapter." T.C.A. § 55-4-129.

*Florida v. Harris*, 568 U.S. 237, 246-47 (2013). A defendant may then contest the dog's reliability through cross-examination of the handler or introducing additional evidence. *Id*. at 247.

Johnson City Police Officer Hannah Farmer handled K9 Rouzo. At the suppression hearing, Officer Farmer testified that she attended and graduated from a seven-and-a-half-week beginner handler school before being put on patrol with Rouzo. She also testified that Rouzo was certified by the North American Police Work Dog Association on January 10, 2018 to detect the presence of marijuana, cocaine, heroin, and methamphetamine. *See* Ex. 2. This certification included tests where Rouzo detected narcotics in a building, a vehicle, and a locker. Ex. 2, pg. 3. Officer Farmer also testified that she continued to train with Rouzo three to four times a week on things such as obedience, narcotics detection, and area searches.

Defendant did not provide any credible argument against Rouzo's reliability and certification. Therefore, in consideration of Officer Farmer's testimony and Rouzo's certification, which he obtained approximately two and a half weeks prior to the traffic stop, the Court finds that Rouzo was certified and that its alert would provide probable cause to search the vehicle.

**C. Officer Garrison had probable cause to search the locked container.**

Finally, Defendant argues that as he had a heighted expectation of privacy in the locked box in his vehicle, officers should have obtained a search warrant prior to opening the box. Defendant does not contest that the officers had probable cause to search the vehicle after K9 Rouzo alerted to the presence of narcotics in the vehicle. The United States responds that the probable cause that supported the search of the vehicle also supported the search of the locked box in the car.

The Supreme Court first established the automobile exception in *Carroll v. United States*, stating that "if the search and seizure without a warrant are made upon probable cause, that is,

7

upon a belief, reasonably arising out of circumstances known to the seizing officer, than an automobile or other vehicle contains that which by law is subject to seizure and destruction, the search and seizure are valid." 267 U.S. 132, 149 (1925); *accord United States v. Smith*, 510 F.3d 641, 647-48 (6th Cir. 2007). This exception was clarified in *United States v. Ross* to include any containers found in the vehicle, defining the scope of the search not by "the nature of the container in which the contraband is secreted…[but rather] by the object of the search and the places in which there is probable cause to believe that it may be found." 456 U.S. 798, 824 (1982). The Supreme Court does not make a distinction between locked and unlocked containers but notes that "[a]n individual undoubtedly has a significant interest that the upholstery of his automobile will not be ripped or a hidden compartment within it opened" but those interests must yield to the search upon a finding of probable cause. *Id*. at 823.

As stated, Defendant does not challenge that K9 Rouzo's alert gives the officers probable cause to search the vehicle as a whole for the presence of narcotics. Instead, he argues that the probable cause did not extend to the locked box found in the backseat floorboard of the vehicle because he had an increased expectation privacy in the locked box. However, Supreme Court and Sixth Circuit precedent clearly disagree. While it is true that Defendant may have had an increased expectation of privacy as to the contents of the locked box, just as he may have an expectation that his car will not be damaged during the search, that expectation must yield to the probable cause established by Rouzo's alert. Officers were searching the car for narcotics and there is no question that based on the size and shape of the box, the box "may conceal the object of the search." *Ross*, 456 U.S. at 825. Therefore, the Court finds that by opening the locked box, officers did not violate the Fourth Amendment.

## IV. CONCLUSION

Based on the foregoing, the undersigned **RECOMMENDS** that Defendant's Motion to Suppress [Doc. 27] be **DENIED**.[2]

Respectfully Submitted,

s/Clifton L. Corker
United States Magistrate Judge

---

[2]Any objections to this report and recommendation must be served and filed by **July 10, 2019**. Fed. R. Crim. P. 59(b)(2). Failure to file objections within the time specified waives the right to review by the District Court. Fed. R. Crim. P. 59(b)(2); *see United States v. Branch*, 537 F.3d 582 (6th. Cir. 2008); *see also Thomas v. Arn*, 474 U.S. 140, 155 (1985) (providing that failure to file objections in compliance with the time period waives the right to appeal the District Court's order). The District Court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive, or general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).