UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | |
| v. | ) | No. 2:18-CR-98 |
| | ) | |
| DANIEL KEITH HYLMON | ) | |

MEMORANDUM OPINON AND ORDER

Before the Court is the report and recommendation of United States Magistrate Judge Clifton L. Corker filed on June 26, 2019, recommending that this Court deny defendant Daniel Keith Hylmon's motion to suppress. [Doc. 31]. On July 10, 2019 defendant filed his objections to the report and recommendation. [Doc. 35]. The government responded. [Doc. 37]. The matter is ripe for review. For the following reasons, the Court ADOPTS the Magistrate Judge's Report, ADOPTS the Recommendation, [Doc. 31], and DENIES defendant's motion to suppress, [Doc. 27].

## I.     BACKGROUND

On July 10, 2018, a federal grand jury returned an indictment against defendant charging him with possession with intent to distribute fifty grams or more of methamphetamine, its salts, isomers, and salts of its isomers, in violation of 21 U.S.C. §§ 841 (a)(1), (b)(1)(A), possession of a firearm in furtherance of a drug trafficking offense in violation of 18 U.S.C. § 924(c)(1)(A), and being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(e), all arising from a January 29, 2018 incident. [Doc. 1].

Defendant filed a motion to suppress. [Doc. 27]. The Magistrate Judge held an evidentiary hearing on June 25, 2019. At the suppression hearing, the government presented Johnson City

1

Police Officers, Alex Garrison and Hannah Farmer, as witnesses. [Doc. 33 at 6-45]. Defendant testified on his behalf. [*Id.* at 45-48].

On June 26, 2019, the Magistrate Judge filed his Report, recommending defendant's motion to suppress be denied. [Doc. 31]. Defendant filed timely objections to the Magistrate Judge's report and recommendation, and the government responded. [Docs. 35; 37].

Defendant did not object to the basic facts outlined in the Magistrate Judge's report and recommendation, but he did object to the findings and legal conclusions related to those facts. After reviewing the record before the Court and finding the facts to be consistent with the Magistrate Judge's report and recommendation, the Court **ADOPTS BY REFERENCE** the facts as set out in the report and recommendation. [Doc. 31 at 2-3]. *See United States v. Winters*, 782 F.3d 289, 295 n.1 (6th Cir. 2013). The Court will refer to the facts only as necessary to analyze the issues raised on objection.

## II. DISCUSSION

Pursuant to Federal Rule of Criminal Procedure 59, "[a] district judge may refer to a magistrate judge for recommendation a defendant's . . . motion to suppress evidence." Fed. R. Crim. P. 59(b)(1). Within fourteen days after being served with a copy of the report and recommendation on a motion to suppress, "a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Crim. P. 59(b)(2). "A judge of the court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b); *see also* Fed. R. Crim. P. 59(b)(3).

This Court must conduct a de novo review of those portions of the report and recommendation to which objection is made and may accept, reject or modify, in whole or in part, the Magistrate

2

Judge's findings or recommendations. 28 U.S.C. § 636(b)(1)(C); *Smith v. Detroit Fed'n of Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). "The district court is not required to review - under a *de novo* or any other standard – 'any issue that is not the subject of an objection.'" *Brown v. Bd. Of Educ.*, 47 F. Supp. 665, 674 (W.D. Tenn. 2014) (emphasis added) (quoting *Thomas v. Arn*, 474 U.S. 140, 149 (1985)). After reviewing the evidence, this Court is free to "accept, reject, or modify, in whole or in part, the findings or recommendations" of the magistrate judge. 28 U.S.C. § 636(b)(1).

Defendant argues in his objections that the Magistrate Judge erred in determining that: (1) the police had probable cause to seize and search the vehicle; (2) the reliability of the drug dog; and (3) defendant's Fourth Amendment rights were not violated in his expectation of privacy in a locked box. [Doc. 35].

**A. Probable Cause to Initiate the Traffic Stop**

Defendant argues the Magistrate Judge erred in determining that Officer Garrison had probable cause to initiate the traffic stop. [Doc. 35]. Specifically, defendant argues that Officer Garrison intended to stop defendant's vehicle even if the license plate had been registered to that vehicle. [*Id.* at 1-2]. Moreover, defendant contends that as soon as Officer Garrison pulled out behind defendant's vehicle, defendant was seized and believed he had no choice but to pull over. [*Id.* at 2]. Defendant maintains he was seized at this point even though Officer Garrison had not yet activated his blue lights. [*Id.*].

A traffic stop is a "seizure" subject to the reasonable requirement of the Fourth Amendment. *Whren v. United States*, 517 U.S. 806, 809-10 (1996); *United States v. Guajardo*, 388 Fed. App'x 483, 487 (6th Cir. 2010) ("The Fourth Amendment's prohibition against unreasonable searches and seizures by the government 'extend[s] to brief investigatory stops of

3

persons or vehicles that fall short of traditional arrest.'" (quoting *United States v. Arvizu*, 534 U.S. 266, 273 (2002))). While *Brendlin v. California*, 551 U.S. 249, 254 (2007), holds a driver can be seized when the police make a traffic stop, the traffic stop alone does not amount to a seizure. "A person is seized by the police and thus entitled to challenge the government action under the Fourth Amendment when the officer, by means of physical force or show of authority, terminates or restrains his freedom of movement." *United States v. McCauley*, 548 F.3d 440, 443 (6th Cir. 2008) (quoting *Brendlin*, 551 U.S. at 254). Measured by an objective standard, a seizure occurs if an examination of all the surrounding circumstances shows that "a reasonable person would have believed that he was not free to leave." *Smoak v. Hall*, 460 F.3d 768, 778 (6th Cir. 2006) (quoting *United States v. Mendenhall*, 446 U.S. 544, 554 (1980)).

Allowing officers to follow as one drives one's own car does not restrict one's movement by a show of authority. *Cf. Michigan v. Chesternut*, 486 U.S. 567, 574-75 (1988) (police driving beside pedestrian in marked cruiser did not amount to seizure). There, the Court acknowledged that "[w]hile the very presence of a police car driving parallel to a running pedestrian could be somewhat intimidating, this kind of police presence does not, standing alone, constitute a seizure." *Id.* at 575. It noted that there was nothing in the record reflecting "that the police activated a siren or flashers; or that they commanded [the defendant] to halt, or displayed any weapons; or that they operated the car in an aggressive manner to block [the defendant's] course or otherwise control the direction or speed of his movement." *Id.* As such, the police conduct involved "would not have communicated to the reasonable person an attempt to capture or otherwise intrude upon [the defendant's] freedom of movement." *Id.* The conduct was not "so intimidating that [the defendant] could reasonably have believed that he was not free to disregard the police presence and go about his business." *Id.* at 576 (internal quotation marks omitted).

In this case, Officer Garrison driving his patrol vehicle behind defendant's vehicle did not amount to a seizure. *See Id.* at 574-75. Although defendant argues he felt as though he were seized at that moment, the permissibility of a traffic stop does not depend on the actual motivations of the individual officers involved. *Whren*, 517 U.S. at 813; *United States v. Hughes*, 606 F.3d 311, 315-16 (6th Cir. 2010). The underlying motive of the officer is not relevant to the Fourth Amendment analysis as long as the officer follows the cardinal rule: there must be a valid traffic stop. *United States v. Blair,* 524 F.3d 740, 748 ( 6th Cir. 2008) ("police officers [may] stop vehicles for any infraction, no matter how slight, even if the officer's real purpose was a hope that narcotics or other contraband would be found as a result of the stop.") (brackets original) (quoting *United States v. Mesa*, 62 F.3d 159, 162 (6th Cir. 1995)). Officer Garrison had yet to show any signs of authority or otherwise act aggressively when he drove behind defendant's vehicle without activating his blue lights.

Officer Garrison testified at the suppression hearing that he initiated the traffic stop only after he had checked defendant's license plate and discovered the license plate did not match the vehicle, a violation of Tennessee Code Annotated § 55-4-129. [Doc. 33 at 7, 20]. Therefore, Officer Garrison had probable cause to stop defendant and the traffic stop was lawful. As such, the Court adopts the Report as to the conclusion that the traffic stop of the defendant's vehicle was lawful.

**B. K-9 Rouzo's Reliability**

Second, defendant argues the Magistrate Judge erred in concluding the police dog's positive alert on defendant's vehicle was reliable. [Doc. 35 at 3]. More particularly, defendant argues the "dog was hard to handle and there appear to be issues with his reliability," because after

the dog alerted to the presence of drugs to its handler, the dog "immediately looked to the handler for the dog's toy." [*Id.*].

Several factors bear specifically on the reliability of a drug detection dog, including training, certification, test results, field performance, and circumstances surrounding a particular alert, such as cuing or working in unfamiliar conditions. *See Florida v. Harris*, 568 U.S. 237, 245-48 (2013); *United States v. Green*, 740 F.3d 275, 283 (4th Cir. 2014); *United States v. Gadson*, 763 F.3d 1189, 1202 (9th Cir. 2014). "[E]vidence of a dog's satisfactory performance in a certification or training program can itself provide sufficient reason to trust his alert . . . . The same is true, even in the absence of formal certification, if the dog has recently and successfully completed a training program that evaluated his proficiency in locating drugs." *Harris*, 568 U.S. at 246-47; *see United States v. Boxley*, 373 F.3d 759, 762 (6th Cir. 2004); *United States v. Sanchez-Pena*, 336 F.3d 431, 444 (5th Cir. 2003). Although field performance is relevant, records from controlled testing are to be given greater weight than field performance records. *See Harris*, 568 U.S. at 245-46.

The certification in the record supports K-9 Rouzo's reliability. Together with his handler, Officer Farmer, Rouzo satisfactorily completed his annual certification through the North American Police Work Dog Association on January 10, 2018. [Doc. 33 at 29-30]. Rouzo and Officer Farmer's training also demonstrate Rouzo's reliability. Beginning in September 2017, Officer Farmer handled Rouzo. Prior to handling Rouzo, Officer Farmer successfully completed a seven-week course at beginner handler's school in Ohio. [*Id.* at 28-29]. Further, the pair would train three to four times a week, with training sessions ranging from thirty minutes to ten hours. [*Id.* at 31]. The training included an assortment of narcotics detection, area search, and tracking

scenarios. [*Id.*]. As such, defendant's argument concerning Rouzo's reliability fails. The Court adopts Judge Corker's conclusion that Rouzo is reliable such that his alert created probable cause.

### C. Expectation of Privacy in the Locked Box

Third, defendant contends that the Magistrate Judge erred in concluding that the officers had probable cause to search the locked container found in the vehicle during the traffic stop. [Doc. 35].

Both Officers Garrison and Farmer testified that Rouzo alerted to the vehicle, and during the search immediately thereafter, the officers found a lockbox on the rear floorboard. [Doc. 33 at 24, 33, 38]. The officers used a small multi-tool to break the lock on the box. [*Id.* at 33].

Under the automobile exception, officers may perform a warrantless search, which may extend to closed containers inside the vehicle, "only where they 'have probable cause to believe the vehicle contains contraband or evidence of criminal activity.'" *Cain v. City of Detroit*, No. 12-15582, 2016 WL 6679831, at * 4 (E.D. Mich. Nov. 14, 2016) (quoting *United States v. Lyons*, 687 F.3d 754, 770 (6th Cir. 2012)). *See United States v. Ross*, 456 U.S. 789, 823-34 (1982). It is well-settled law that " a positive indication by a properly-trained dog is sufficient to establish probable cause for the presence of a controlled substance." *United States v. Torres-Ramos*, 536 F.3d 542, 554 (6th Cir. 2008). *See also Illinois v. Caballes*, 543 U.S. 405 (2005) (holding that the use of a "well-trained narcotics-detection dog" to sniff around the exterior of a vehicle during a traffic stop does not implicate Fourth Amendment privacy interests). Absent more, it is clear that the police had probable cause to search the locked container in defendant's vehicle after Rouzo sat to alert Officer Farmer of the presence of narcotics. The Court agrees with Judge Corker that the officers did not violate defendant's Fourth Amendment rights by opening the locked box.

7

## III. CONCLUSION

This matter is before the Court on defendant's objection to the Magistrate Judge's Report and Recommendation. [Doc. 35]. For the reasons stated in the memorandum opinion and the Court being otherwise sufficiently advised, the Court **ACCEPTS AND ADOPTS** the report and recommendation, [Doc. 31], of the magistrate judge in its entirety.

It is further ordered that:

(1) the defendant's objection to the Magistrate Judge's Report and Recommendation [Doc. 35], is **OVERRULED**; and

(2) the defendant's motion to suppress evidence [Doc. 27], is **DENIED**.

So ordered.

ENTER:

> s/J. RONNIE GREER
> UNITED STATES DISTRICT JUDGE